### 6010. SOUTHERN RAILWAY COMPANY *v.* DUKE.

1. One who, at the request of a depot agent of a railroad company, who has no apparent authority to employ other servants, voluntarily undertakes to assist a porter of the company in loading a trunk on one of its cars, is a mere volunteer, and the company owes him no duty except that which it owes to a trespasser; that is, not to injure him wilfully and wantonly after his peril is discovered.
2. Where the plaintiff and a railroad porter were lifting a trunk weighing 175 pounds on board a car, the position of the plaintiff at one end of the trunk was not so obviously perilous to the porter at the other end as to charge the porter (and through him the railroad company that employed him) with wilful and wanton negligence in letting his end of the trunk fall to the ground.

DECIDED AUGUST 5, 1915.

Action for damages; from city court of Carrollton—Judge Beall. September 16, 1914.

*Maddox, McCamy & Shumate, B. F. Boykin,* for plaintiff in error.
*W. E. Spinks, S. Holderness,* contra.

WADE, J. The plaintiff alleged in his petition that in March, 1911, he accompanied his daughter-in-law to the town of Villa

43

Rica, in order that she might take passage on a train of the defendant company; that after arriving very early in the morning at the depot, he delivered her baggage to a "night operator" to be checked, but this operator requested that the plaintiff wait until "the day man" came on duty, and this he did; that when the depot-agent arrived, the said agent ordered the negro porter, who stayed at the depot, to check the said baggage, and, being himself otherwise engaged at the time, requested the plaintiff "to assist defendant's said porter in checking and tagging said baggage," and this the plaintiff did; and when the plaintiff and the porter "had checked and tagged said baggage, they placed it on a small hand-wagon, for the purpose of transporting and loading it on the cars." The plaintiff further alleged, that when the train arrived, which his daughter-in-law intended to board, he and the porter pushed the hand-wagon across the railroad-track "to the place for loading it [baggage] on the train," and that the "said porter then asked him to assist him in putting the trunk on the car, as it was rather heavy to lift; which petitioner undertook to do, he taking hold of one end of it and said porter the other, and, as they lifted it from the wagon for the purpose of placing it on the car, said porter, without any notice or warning whatever, carelessly and negligently turned his end of said trunk loose, thereby permitting his said end of the same to fall, striking petitioner's left foot," and inflicting various injuries upon him, which he alleged to be permanent. The petition still further set forth that the accident "was caused by the negligence of defendant's said porter in turning his end of said trunk loose, and in not warning petitioner of the fact that he was going to, or had turned it loose, in time for petitioner to have gotten out of the way of it before it struck him, there being no necessity for said porter to turn said trunk loose when he did." By amendment it was alleged "that the agent in charge of the defendant company's agency at Villa Rica requested petitioner to assist in checking and loading the baggage of his daughter-in-law, agreeing to pay him therefor." The plaintiff further amended the petition by alleging that the trunk which he was assisting the negro porter to load on the defendant's car and which fell on his foot was very heavy, weighing 175 pounds, and as he had hold of the trunk at one end and the porter at the other, "it was apparent to said porter that if he should drop his end of the trunk without first

giving due notice to the plaintiff of this fact, it would be impossible for him to extricate himself from his perilous position before being hurt;" that the peril was well known to "defendant's said porter at the time of and prior to the letting of his end of said trunk fall;" and that the plaintiff "was, at the time he received said injuries, on defendant's depot yards and grounds, which it had prepared for the purpose of accommodating its passengers and others who might have business with it in and about the operation of its passenger-trains when he was hurt." A demurrer to the petition as amended was overruled.

The petition as originally drawn did not attempt to make the plaintiff an employee or servant of the defendant company. The rule is well settled in Georgia that a mere volunteer has no right of action for injuries resulting to him in doing acts which he voluntarily undertakes without sufficient legal reason or excuse. In *Central Railway Co.* v. *Mullins,* 7 *Ga. App.* 381 (66 S. E. 1028), this court said: "One who, without any employment whatever, but at the request of a servant who has no authority to employ other servants, voluntarily undertakes to perform service for a master is a mere volunteer, and the master does not owe him any duty, except that which he owes to a trespasser,—that is, not to injure him wilfully or wantonly after his peril is discovered." See also *Rhodes* v. *Georgia Railroad Co.,* 84 *Ga.* 320 (10 S. E. 20, 20 Am. St. R. 362); *Atlanta & West Point R. Co.* v. *West,* 121 *Ga.* 641 (49 S. E. 711, 67 L. R. A. 701, 104 Am. St. R. 179); *Jenkins* v. *Central Ry. Co.,* 124 *Ga.* 986-989 (53 S. E. 379). The amendment reciting that "the agent in charge of the defendant company's agency" requested the plaintiff to assist the porter in checking and loading the baggage of his daughter-in-law, "agreeing to pay him therefor," was insufficient to convert the plaintiff from a mere volunteer to an employee of the defendant company. In fact the amendment does not even allege that the agent who agreed to pay the plaintiff to assist in loading this particular trunk intended to employ the plaintiff in behalf of the company, or that the defendant so understood it, but the allegation is that the agent requested the petitioner to assist, etc., and agreed to pay the plaintiff therefor; and, construed by the usual and ordinary rules, this would amount to an allegation that the agent himself was to pay for the services rendered and not the defendant company. In addition to all this, it

does not appear from any allegation in the petition as originally drawn or as amended that the depot-agent had any authority to employ the plaintiff in behalf of the company to assist the porter in loading one trunk or any number of trunks on a train of the company, or that the agent sought to exercise any such authority in its behalf, and it can not be said that the relation of master and servant was created by reason of any facts stated in the plaintiff's petition, even as amended.

The other amendment attempts to hold the defendant liable on the idea that the conduct of the porter in dropping one end of a heavy trunk without giving due notice to the plaintiff of his intention, when he knew that the plaintiff was in a perilous position from which it would be impossible to extricate himself after the porter dropped his end of the trunk, amounted to a wilful and wanton act of negligence on the part of the company. As to this, we think it sufficient to say that the facts alleged do not in our opinion show such a wilful and wanton act on the part of the defendant or its porter as would authorize any recovery therefor. Under the allegations made, there was negligence on the part of the porter, but, construing the petition most strongly against the pleader, we can not say that the negligence as alleged amounted to wilful and wanton negligence. Apparently it amounted to no more than simple carelessness in the performance of an act which the porter could not reasonably assume involved any serious elements of danger. Neither does it clearly appear from the petition, by reason of any facts therein stated, that the porter reasonably knew that his alleged carelessness would probably or even possibly result in injury to the plaintiff, or that the plaintiff, in sustaining one end of a trunk weighing 175 pounds, in an open unconfined space, was in a perilous position, or would be placed in a perilous position by the dropping of the other end of the trunk, of that weight, a distance not alleged, of perhaps only one or two feet, to the ground.

It is insisted that even if it be conceded that the plaintiff was a mere volunteer, or even a trespasser, the company might nevertheless be held liable because of the injuries resulting to him, as the company was "bound to anticipate his presence and to take such measures as ordinary care and diligence would suggest to avoid injury to him." This view also does not demand discussion. As

stated in *Central Railway Co.* v. *Mullins,* supra, a railroad company is not liable to a mere volunteer who unnecessarily places himself in a dangerous position in the yard of the company for the purpose of performing a voluntary service, "unless it be established that the injuries were caused by the wilful and wanton act of the company." We do not see how, under any view of the facts alleged in the petition as amended, it could be said that the injuries were caused by the wilful and wanton act of the defendant; and since the plaintiff was a mere volunteer in attempting to perform a service which brought about the injuries complained of, he can not complain because the company failed to surround him with safeguards or assistance sufficient to prevent the possibility of injury, when the company could not possibly assume that he would undertake to do the act from which the injury resulted; bearing in mind that under our construction of the petition, the agent and not the company engaged him to assist the porter in loading the trunk.                               *Judgment reversed.*

RUSSELL, C. J., concurring dubitante. It is clear that the plaintiff would not be entitled to recover, unless the jury would be authorized to find that his injury was the result of wantonness and wilfulness on the part of the defendant's agent. Though somewhat inclined to hold that under the facts stated the trial judge did not err in submitting to a jury the question whether the dropping of the trunk, at the time and under the circumstances, evidenced such a reckless and utter disregard of the plaintiff's safety as to constitute wantonness, still, in view of the fact that the petition does not contain any distinct allegation that the negligence of the defendant's servant was either wanton or wilful, and because perhaps it may be judicially inferred that wantonness could not arise in the dropping of a trunk which weighed only 175 pounds, I concur in the reversal of the judgment.